# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:16-CR-00264 |
| v. | (Chief Judge Brann) |
| JULIOUS BULLOCK, | |
| Defendant. | |

### MEMORANDUM OPINION

### MAY 25, 2022

## I.   BACKGROUND

In 2016, Julious Bullock was indicted for assaulting a federal officer, in violation of 18 U.S.C. §§ 111(a), (b).[1] Bullock thereafter pled guilty, pursuant to a written plea agreement, to that charge.[2] The plea agreement noted that the offense carried a maximum term of 20 years' imprisonment, and provided that, at sentencing, the Government could recommend any sentence up to the maximum sentence permitted by law.[3]

Although the plea agreement required the Government to make certain recommendations, it iterated that the Court was not bound by the plea agreement and was "free to impose upon the defendant any sentence up to and including the maximum sentence of imprisonment for 20 years."[4] The plea agreement informed

---

[1]   Doc. 1.
[2]   Docs. 21, 25.
[3]   Doc. 21 at 1, 8-9.
[4]   *Id.* at 18.

Bullock that, if he received a sentence with which he was dissatisfied, he would not be permitted to withdraw his guilty plea.[5]

At the change of plea hearing, the Court reiterated that the maximum sentence that could be imposed was 20 years' imprisonment, and Bullock acknowledged that he understood this.[6] Bullock's attorney stated at the hearing that he had provided an estimate of the potential sentence to Bullock, and the Government estimated the range to be, at the low end, 33 to 41 months' imprisonment.[7] Bullock understood, however, that prior convictions may impact his Sentencing Guidelines range and that, if the actual Sentencing Guidelines range were different than those estimates, he would not be able to withdraw his guilty plea.[8] He further understood that any recommendations made by the parties were not binding on the Court, and that the Court had the authority to impose a sentence outside of the Sentencing Guidelines range.[9]

The Court ultimately accepted the guilty plea, and a Presentence Report (PSR) was prepared.[10] The PSR noted that, while an inmate at the United States Penitentiary in Lewisburg, Pennsylvania, Bullock was being transported by a correctional officer when Bullock became agitated and verbally aggressive toward

---

[5]  *Id.* at 18-19.
[6]  Doc. 40 at 15.
[7]  *Id.* at 16-17.
[8]  *Id.* at 17-18.
[9]  *Id.* at 18-19.
[10] Docs. 26, 46.

that officer.[11] Bullock then turned toward the officer and "head-butted the officer in the face, striking the bridge of [the officer's] nose."[12] Bullock was eventually subdued by the officer.[13]

The PSR also detailed Bullock's lengthy criminal history—a history that spanned his entire adult life.[14] These convictions include several minor offenses, as well as more serious crimes such as three convictions under North Carolina state law for common law robbery, and a conviction for being a felon in possession of a firearm.[15] The PSR also detailed dozens of misconducts that Bullock had incurred while incarcerated.[16]

The PSR calculated a base offense level of 10[17] for Bullock's offense and increased the offense level by 3 levels because the offense involved physical contact,[18] and by 2 levels because the victim sustained bodily injury.[19] However, the PSR noted that, based on his crime of conviction and prior convictions in North Carolina for common law burglary, Bullock qualified as a career offender, and his offense level was therefore 32.[20] The PSR subtracted 3 levels for acceptance of

---

[11] Doc. 46 at 3.
[12] Id.
[13] Id.
[14] Id. at 8-10.
[15] Id.
[16] Id. at 11-12.
[17] Id. at 7; U.S. Sentencing Guidelines Manual § 2A2.4(a) (2016).
[18] Doc. 46 at 7; USSG § 2A2.4(b)(1)(A).
[19] Doc. 46 at 7; USSG § 2A2.4(b)(2).
[20] Doc. 46 at 7; USSG § 4B1.1(b)(3).

responsibility, resulting in a total offense level of 29.[21] The PSR calculated fourteen criminal history points based upon Bullock's criminal history, resulting in a criminal history category VI.[22] The PSR then calculated an advisory Sentencing Guidelines range of 151 to 188 months' imprisonment.[23]

Bullock's attorney filed objections to the PSR and challenged Bullock's designation as a career offender.[24] Counsel argued both that the offense of conviction could not support a career offender enhancement, and that North Carolina common law robbery did not qualify as a predicate offense sufficient to support that enhancement.[25] The Court overruled the objection, finding that Bullock qualified as a career offender.[26] At sentencing, this Court departed downward from the Sentencing Guidelines range and sentenced Bullock to 84 months' imprisonment.[27]

Bullock thereafter filed an appeal with the United States Court of Appeals for the Third Circuit, arguing that he did not qualify as a career offender because a conviction pursuant to 18 U.S.C. § 111(b) does not categorically qualify as a crime of violence.[28] The Third Circuit determined that such a conviction is a crime of

---

[21] Doc. 46 at 7; USSG § 3E1.1(a), (b).
[22] Doc. 46 at 12. The PSR noted that a criminal history category VI would also be warranted based upon Bullock's status as a career offender. *Id.*
[23] *Id.* at 15.
[24] Doc. 38; Doc. 51 at 4-9.
[25] *Id.*
[26] Doc. 53.
[27] Doc. 59.
[28] *United States v. Bullock*, 970 F.3d 210, 213 (3d Cir. 2020).

violence and that Bullock was therefore "properly designated a career offender," and affirmed Bullock's sentence.[29]

While Bullock's appeal was pending, he filed a 28 U.S.C. § 2255 motion, along with a later supplement, which this Court denied without prejudice based upon Bullock's pending appeal.[30] In 2021, Bullock filed a timely § 2255 motion challenging his conviction and sentence[31] and, in his notice of election, Bullock requested that the Court combine his newest motion with his previous § 2255 motions.[32] Bullock raises four distinct claims. He first asserts that his attorney was ineffective because counsel advised Bullock to sign a plea agreement without knowing the possible sentencing range.[33] Second, and relatedly, Bullock argues that he did not knowingly and voluntarily enter his guilty plea as he did not know the potential sentence that he faced.[34] Third, Bullock contends that the Court erred in sentencing him as a career offender since the offense of common law robbery under North Carolina law does not qualify as a predicate offense sufficient to support a career offense enhancement.[35] Finally, Bullock asserts that the definition of a "crime of violence" under the Sentencing Guidelines is unconstitutionally vague.[36]

---

[29] *Id.* at 217.
[30] Docs. 70, 71, 82.
[31] Doc. 106.
[32] Doc. 108 at 2.
[33] Doc. 70 at 6-7; Doc. 106 at 5.
[34] Doc. 70 at 7; Doc. 106 at 8.
[35] Doc. 70 at 8-10; Doc. 106 at 6.
[36] Doc. 71 at 2-4.

The Government has responded to Bullock's § 2255 motion and asserts that he did not receive ineffective assistance of counsel, nor did any other cognizable error occur.[37] Bullock has not filed a reply brief, and this matter is therefore ripe for disposition. For the following reasons, the Court will deny Bullock's motion.

## II.   DISCUSSION

### A.   Ineffective Assistance of Counsel

First, Bullock asserts that plea counsel was ineffective because counsel did not know the potential Sentencing Guidelines range, and incorrectly estimated the sentence that Bullock may receive.[38]

"In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims."[39] "The first part of the *Strickland* test requires 'showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[40] In determining whether an attorney's performance is deficient, courts must "determine whether, in light of all the circumstances, the [attorney's] acts or omissions were outside the wide range of professionally competent assistance."[41] As the United States Supreme Court has emphasized:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's

---

[37]  Doc. 112.
[38]  Doc. 106 at 5.
[39]  *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015).
[40]  *Id.* (quoting *Strickland*, 466 U.S. at 687).
[41]  *Strickland*, 466 U.S. at 690.

assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."[42]

"The second part [of the *Strickland* test] specifies that the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[43] "This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable."[44] "In the context of a guilty plea, the prejudice prong of the test requires a showing 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'"[45]

Regardless of whether counsel performed deficiently in estimating the potential sentence that Bullock may receive, the Court concludes that Bullock has failed to establish any prejudice. The Third Circuit has held that "[w]hen addressing a guilty plea, counsel is required to give a defendant enough information to make a

---

[42] *Id.*
[43] *Bui*, 795 F.3d at 366 (quoting *Strickland*, 466 U.S. at 694).
[44] *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks omitted).
[45] *United States v. Fazio*, 795 F.3d 421, 426 (3d Cir. 2015) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)).

reasonably informed decision whether to accept a plea offer," which necessarily includes "the comparative sentence exposure between standing trial and accepting a plea offer."[46] "However, 'an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where an adequate plea hearing was conducted.'"[47]

> The Third Circuit has emphasized that:
>
> all that the law requires is that the defendant be informed of his/her exposure in pleading guilty. The law does not require that a defendant be given a reasonably accurate "best guess" as to what his/her actual sentence will be; nor could it, given the vagaries and variables of each defendant's circumstances and offending behavior.[48]

Consequently, where a court's plea colloquy accurately establishes the maximum term of imprisonment that the defendant faces and advises the defendant that the court has the discretion to impose a sentence outside of the Sentencing Guidelines range and up to the statutory maximum term of imprisonment, a defendant suffers no prejudice from an erroneous sentencing prediction by his attorney.[49]

Here, both the plea agreement and the Court's plea colloquy informed Bullock of these critical facts. Bullock was informed that the charged offense carried a statutory maximum sentence of 20 years' imprisonment,[50] and that the Court was not bound by the Sentencing Guidelines range but was instead "free to impose upon the defendant any sentence up to and including the maximum sentence of

---

[46] *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015).
[47] *Id.* (quoting *United States v. Shedrick,* 493 F.3d 292, 299 (3d Cir. 2007) (brackets omitted)).
[48] *Shedrick*, 493 F.3d at 299.
[49] *Id.* at 299-300.
[50] Doc. 21 at 1; Doc. 40 at 15.

imprisonment for 20 years."[51] Because the plea agreement and the plea colloquy that the Court conducted with Bullock cured any potential prejudice from plea counsel's allegedly erroneous sentencing estimate, Bullock's claim of ineffective assistance of counsel fails.[52]

### B.     Application of Career Offense Enhancement

Finally, the Court turns to the question of whether Bullock's sentence was improperly enhanced through application of the career offender enhancement. As an initial matter, to the extent that Bullock seeks to raise this issue as a freestanding claim, the Court cannot reach the substance of that claim, as Bullock failed to raise this issue on direct appeal and has therefore committed procedural default.

The United State Supreme Court has long held that there is a "general rule that claims not raised on direct appeal may not be raised on collateral review unless the [movant] shows cause and prejudice"[53] or is able to demonstrate "that he is actually innocent."[54] To show cause for procedural default, "a defendant must show that 'some objective factor external to the defense impeded counsel's efforts' to raise

---

[51] Doc. 21 at 18; *see* Doc. 40 at 17-19.
[52] Nor is the Court able to conclude that Bullock's guilty plea was not knowing and voluntary based upon the inaccurate estimate of Bullock's potential sentence. *See, e.g., United States v. Pease,* 240 F.3d 938, 940-42 (11th Cir. 2001) (rejecting argument by defendant who was sentenced as a career offender that his plea was not knowing and voluntary because he had relied on counsel's erroneous prediction regarding his potential sentence).
[53] *Massaro v. United States*, 538 U.S. 500, 504 (2003). *See also Travillion*, 759 F.3d at 288 n.11 (noting that "issues which should have been raised on direct appeal may not be raised with a § 2255 motion").
[54] *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotation marks omitted).

9

the claim."⁵⁵ "Examples of external impediments which have been found to constitute cause in the procedural default context include interference by officials, a showing that the factual or legal basis for a claim was not reasonably available to counsel, and ineffective assistance of counsel."⁵⁶

In his initial appeal Bullock argued that the was erroneously classified as a career offender because his offense of conviction did not qualify as a crime of violence.⁵⁷ Bullock could have argued that he did not qualify as a career offender because his North Carolina convictions for common law robbery did not qualify as predicate offenses, but he did "not contest"⁵⁸ that issue before the Third Circuit, and he therefore committed procedural default. Consequently, this Court may consider Bullock's claim only if he is able to establish cause and prejudice, or actual innocence.⁵⁹ The Court concludes that he cannot. First, as to actual innocence, Bullock presents no new evidence that was not previously available; this precludes the possibility that, on the current record, the Court may find that Bullock is actually innocent of his crime of conviction.⁶⁰

---

⁵⁵ *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005) (quoting *McCleskey v. Zant,* 499 U.S. 467, 493 (1991)).
⁵⁶ *Id.* (internal quotation marks omitted).
⁵⁷ *Bullock*, 970 F.3d at 213.
⁵⁸ *Id.*
⁵⁹ *Massaro*, 538 U.S. at 504.
⁶⁰ *See Wallace v. Mahanoy*, 2 F.4th 133, 151 (3d Cir. 2021) ("To satisfy the demanding actual innocence exception, a [movant] must (1) present new, reliable evidence of his innocence; and (2) show by a preponderance of the evidence that it is more likely than not that no reasonable juror would have convicted him (*i.e.*, a reasonable juror would have reasonable doubt about his guilt) in light of the new evidence").

As to whether cause exists to excuse Bullock's procedural default, the only possible cause would be ineffective assistance of counsel. However, the Third Circuit has explicitly held that "both North Carolina common law robbery and generic federal robbery . . . contain the same elements" and therefore courts must treat "convictions for North Carolina common law robbery as the enumerated crime of robbery and apply[] the career offender enhancement to [a defendant's] sentence."[61] Any argument that the Court erred in concluding that North Carolina common law robbery is a crime of violence sufficient to support application of the career offender enhancement would have been meritless, and it is well established that "counsel cannot be deemed ineffective for failing to raise a meritless claim."[62] Bullock's procedural default therefore may not be excused, and the Court will not reach the merits of this argument nor, even if the Court were to reach the merits, would his claim have any merit in light of binding Third Circuit precedent holding that North Carolina common law robbery is a crime of violence.[63] Consequently, Bullock's claim related to the improper application of the career offender enhancement—whether cast as a standalone claim or one based upon allegations of ineffective assistance of counsel—must be rejected.[64]

---

[61] *United States v. Graves*, 877 F.3d 494, 504 (3d Cir. 2017).

[62] *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 379 (3d Cir. 2018) (internal quotation marks omitted). For this reason, even if construed as a claim of ineffective assistance of counsel, Bullock's claim would fail.

[63] *Graves*, 877 F.3d at 504.

[64] Although Bullock argues that the career offender provisions of the Sentencing Guidelines are unconstitutionally vague, Doc. 71, the Supreme Court has unequivocally rejected any such

11

### C. Certificate of Appealability

Because the Court will deny Bullock's § 2255 motion, this decision is not appealable unless this Court or a circuit justice issues a certificate of appealability.[65] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."[66] To satisfy this standard Bullock must demonstrate that reasonable jurists would find that the Court's assessment of the constitutional claim is debatable or wrong.[67] The Court finds that Bullock has not met this burden, and therefore declines to issue a certificate of appealability.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Bullock has not demonstrated any error that would warrant vacating his conviction or sentence, and his 28 U.S.C. § 2255 motion will be denied. The Court will also deny a certificate of appealability.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

assertion and has held that "the advisory Sentencing Guidelines are not subject to a due process vagueness challenge." *Beckles v. United States*, 137 S. Ct. 886, 897 (2017). Accordingly, this claim will likewise be denied.
[65] 28 U.S.C. § 2253(c)(1)(B).
[66] *Id.* § 2253(c)(2).
[67] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).